**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **YOONA HA,** | | |
| **Plaintiff,** | | |
| **v.** | | **No. 14 C 00895** |
| | | **Judge Harry D. Leinenweber** |
| **NORTHWESTERN UNIVERSITY,** | | **Magistrate Judge Daniel G. Martin** |
| **Defendant.** | | |

**DEFENDANT NORTHWESTERN UNIVERSITY'S ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Northwestern University ("Northwestern" or "the University") hereby answers

the Complaint of Plaintiff Yoona Ha ("Plaintiff") as follows:

**Nature of Action**

1.      Plaintiff Yoona Ha ("Ha") brings this action under Title IX of the Education
Amendments Act of 1972 to redress the unlawful discrimination and retaliation by Defendant
Northwestern University ("Northwestern") after she reported sexual harassment committed by
Northwestern's employee Peter Ludlow.

**ANSWER**:      Northwestern admits that Plaintiff purports to bring this action under Title

IX of the Education Amendments of 1972 ("Title IX") but denies that Northwestern has violated

Title IX or engaged in unlawful discrimination or retaliation with regard to Plaintiff Yoona Ha and

incorporates by reference its Answers to Paragraphs 27, 37, and 45.  Northwestern admits that

Plaintiff brought certain allegations of sexual harassment against Peter Ludlow, a Northwestern

employee, to Northwestern's attention but denies that the allegations Plaintiff brought to the

University's attention during the University's prompt and thorough investigation included all of the

allegations now set forth in this Complaint.  Northwestern admits that it conducted a prompt and

thorough investigation of the allegations that Plaintiff brought to its attention ("the University's

Investigation"); substantiated some, but not all, of those allegations; found that Ludlow had

violated the University's policy against sexual harassment; and imposed several disciplinary

sanctions and other corrective actions against Ludlow.  Northwestern denies any remaining

allegations of Paragraph 1.

2.      Specifically, Plaintiff seeks to be made whole for the damage caused by Defendant
Northwestern University's deliberate indifference and retaliation in handling her sexual assault
complaint, including, but not limited to the full payment of her medical bills accrued and future
medical bills; waiver and/or reimbursement of her tuition; compensation for her emotional distress;
proper remedial actions regarding her claim, and attorney fees she has incurred.

**ANSWER**:      Northwestern admits that Plaintiff seeks the relief identified in her

Complaint in this action.  Northwestern denies that it acted with "deliberate indifference and

retaliation" in handling Plaintiff's allegations of sexual harassment and denies the remaining

allegations of Paragraph 2.

## Jurisdiction and Venue

3.      Plaintiff brings this action pursuant to Title IX of the Education Amendments Act of
1972, Section 901(a), as amended, U.S.C. Section 1681 (a) ("Title IX").  This Court has
jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

**ANSWER**:      Northwestern admits that Plaintiff purports to bring this action under Title

IX and that this Court has jurisdiction over Plaintiff's Title IX claim pursuant to 28 U.S.C. § 1331.

Northwestern denies the remaining allegations of Paragraph 3.

4.      Venue is proper under 28 U.S.C. 1391(b) because the events giving rise to the
claims alleged herein occurred within the Northern District of Illinois.

**ANSWER**:      Northwestern admits that venue is proper under 28 U.S.C. §1391(b) but

lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph

4.

**General Factual Allegations**

5.      Plaintiff Yoona Ha is an adult female and is a junior majoring in journalism at Defendant Northwestern University.  She also works for Defendant Northwestern University under a work-study program.

**ANSWER**:    Northwestern admits the allegations of Paragraph 5.


6.      Defendant Northwestern University is an institution of higher education duly organized and existing under the laws of the State of Illinois which received federal financial assistance for its education program.

**ANSWER**:     Northwestern admits the allegations of Paragraph 6.


7.      In the fall quarter of her freshman year, Plaintiff took "Philosophy of Cyberspace" taught by Peter Ludlow ("Ludlow").  He is a tenured professor at the Department of Philosophy and is employed by Defendant Northwestern.

**ANSWER**:    Northwestern admits that Ludlow is a tenured professor working in the

University's Department of Philosophy and admits the remaining allegations of Paragraph 7.


8.      Philosophy of Cyberspace was about ethical and moral considerations one in a virtual world and exploring the philosophical meanings of what is considered 'real life' and what is considered 'virtual life'.  To teach this class, Ludlow used "Second Life," which is an internet based program where users can interact in a virtual world using a software based avatar.  Ludlow would show videos of virtual characters having sex to the students during classes.

**ANSWER**:    Northwestern admits the allegations of Paragraph 8 and admits that Ludlow

has asserted that he had a pedagogical justification for showing the videos referenced in the third

sentence of Paragraph 8.


9.      Plaintiff always kept her interactions and communications with Ludlow professional.

**ANSWER**:    Northwestern lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 9.

3

10.     On or about February 8, 2012, Plaintiff learned of an art event in Chicago which was related to Ludlow's field of research and interest.  Plaintiff emailed Ludlow information on the event and suggested he should attend.

**ANSWER**:     Northwestern admits that, on or about February 8, 2012, Plaintiff e-mailed

Ludlow information regarding an art event in Chicago, informed him that she was planning to

attend, and suggested that he should attend as well.  Northwestern lacks knowledge or information

sufficient to admit or deny the remaining allegations of Paragraph 10.

11.     The same day, Ludlow emailed Plaintiff back and then asked her to come to the event with him.  Plaintiff agreed.

**ANSWER**:      Northwestern admits that, on or about February 8, 2012, Ludlow sent

Plaintiff an e-mail in response to the e-mail referenced in Paragraph 10 in which he offered to drive

Plaintiff to the event referenced in Paragraph 10 and that Plaintiff accepted Ludlow's offer.

12.     On or about February 10, 2012, Ludlow asked Plaintiff to meet with him at his office so that they could drive to the event together. Ludlow and Plaintiff drove in Ludlow's car to Columbia College in Chicago to see one of the exhibits which was part of the art event.

**ANSWER**:     Northwestern admits that Ludlow suggested that Plaintiff come by his office

after Plaintiff asked where she could meet him so that they could drive to the event together and

admits that the University's Investigation found that Plaintiff and Ludlow drove in Ludlow's car to

Chicago and attended one or more art events or exhibits.  Northwestern lacks knowledge or

information sufficient to admit or deny the remaining allegations of Paragraph 12.

13.     Afterwards, they went to a restaurant.  Ludlow ordered a wine for Plaintiff.  Plaintiff repeatedly stated that she was underage and she did want to drink, but Ludlow insisted that she drink.  Ludlow said he would "cover for her" if the restaurant asked her ID.

**ANSWER**:     Northwestern admits that the University's Investigation found that, on or

about February 10, 2012, Plaintiff and Ludlow went to a restaurant at which either Plaintiff or

4

Ludlow ordered Plaintiff an alcoholic beverage. Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 13.

14.     Ludlow stated that he personally knew two of the women who were curating the exhibits that they were going to, and that he had a sexual relationship with both women and one of them used to be a prostitute.

**ANSWER**:     Northwestern lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 14.

15.     On the way to other exhibits of the art event, Ludlow told Plaintiff that he needed to go to a bar for more drinks. At the bar, Ludlow again insisted that Plaintiff drink and ordered a beer for her. At this point, Plaintiff was under the influence of alcohol, and asked Ludlow to take her back to Evanston, which he refused. Instead, he told Plaintiff that they should "party together."

**ANSWER**:     Northwestern admits that the University's Investigation found that, on or about February 10-11, 2012, either Plaintiff or Ludlow ordered Plaintiff alcoholic beverages during the course of the evening. Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 15.

16.     Instead of taking Plaintiff to Evanston, Ludlow took her to a different exhibit. Then he started to take pictures of Plaintiff, which made her very uncomfortable, and she started to feel afraid.

**ANSWER**:     Northwestern admits that the University's Investigation found that, on or about February 10-11, 2012, Ludlow and Plaintiff attended one or more art events or exhibits together and that Ludlow took pictures of Plaintiff. Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 16.

17.     Plaintiff again reiterated that she needed to go back to Evanston when they got out of the exhibit. Ludlow instead took her to a warehouse for another art performance. At this point, Plaintiff was disoriented from the alcohol and did not know where she was. During the performance, Ludlow slouches in a way that his back was touching Plaintiff's.

5

**ANSWER**:     Northwestern admits that the University's Investigation found that, on or about February 10-11, 2012, Ludlow and Plaintiff attended one or more art events or exhibits and that either Plaintiff or Ludlow ordered Plaintiff alcoholic beverages during the course of the evening. Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 17.

18.     Afterward, Ludlow told Plaintiff that he needed to stop by his apartment to drop something off.  He continued to disregard Plaintiff's renewed requests to take her to the Evanston Campus.  He also insisted that Plaintiff go up to his apartment with him.

**ANSWER**:     Northwestern admits that the University's Investigation found that, on or about February 10-11, 2012, Ludlow and Plaintiff visited Ludlow's apartment during the course of the evening.  Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 18.

19.     When they were in Ludlow's apartment, he again insisted strongly that she drink, which Plaintiff did.  Ludlow started to talk about his sex life and to inquire as to Plaintiff's sexual relationships.  Plaintiff felt uncomfortable and requested to leave the apartment.

**ANSWER**:     Northwestern admits that the University's Investigation found that, on or about February 10-11, 2012, Ludlow and Plaintiff visited Ludlow's apartment during the course of the evening.  Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 19.

20.     Ludlow took her to a bar and again urged her to drink.  It was now around midnight of February 11, 2012 and at this point, Plaintiff was already very drunk.  Ludlow commented on how attractive Plaintiff was and started to rub her back and kiss her at the bar.  Plaintiff was too intoxicated to put up any meaningful resistance to Ludlow's unwelcome advances.  Ludlow also asked if Plaintiff wanted money and stated that they should continue to see each other.

**ANSWER**:     Northwestern admits that the University's Investigation found that, during the evening of February 10-11, 2012, either Plaintiff or Ludlow ordered Plaintiff alcoholic

1194997.4

beverages during the course of the evening and that Ludlow engaged in unwelcome and inappropriate sexual advances toward Plaintiff by initiating rubbing her back and kissing her. Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 20.

21.     Plaintiff's degree of intoxication by this time caused her memory of events to fade in and out, it is likely that at around this time, she went in and out of consciousness as well.  At some point she found herself outside of the bar and sitting down in the snow.  Ludlow tried to drag her into another bar.

**ANSWER**:     Northwestern admits that the University's Investigation found that Plaintiff became intoxicated but lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 21.

22.     When Plaintiff gained her consciousness again, she was in an elevator going up to Ludlow's apartment, with Ludlow furiously making out with Plaintiff.

**ANSWER**:     Northwestern admits that the University's Investigation found that, on or about February 10-11, 2012, Ludlow and Plaintiff visited Ludlow's apartment during the course of the evening and that Ludlow initiated kissing Plaintiff.  Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 22.

23.     Plaintiff begged Ludlow to stop, but he groped her breast and buttocks, and told Plaintiff that it was "inevitable" that they would have sex.  Plaintiff's next recollection was when she woke up at around 4:00 am in Ludlow's bed.  Ludlow was in bed with her, and his arms were around her.  She panicked and blacked out.

**ANSWER**:     The University's Investigation did not find that Ludlow groped Plaintiff's breast and buttocks but admits that the University's Investigation found that Plaintiff woke up in Ludlow's bed at approximately 4:30 a.m. with Ludlow's arms around her.  Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 23.

24.     Ludlow dropped Plaintiff off at Evanston around noon on February 11, 2012 and told her that he was looking forward to seeing her again and kissed her again.

**ANSWER**:     Northwestern lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 24.

25.     On or about February 12, 2012 Plaintiff told one of her professors about the incident with Ludlow.

**ANSWER**:     Northwestern admits the allegations of Paragraph 25.

26.     After reporting the sexual assault by Ludlow to the professor, Plaintiff confronted Ludlow and Ludlow begged Plaintiff not to tell anyone, and told her that he could mentor her academically or pay her money.

**ANSWER**:     Northwestern lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 26.

27.     The Director of Sexual Harassment Prevention Joan Slavin was informed by a faculty member that Plaintiff had complained about Ludlow's conduct and began to interview at least some of the people with knowledge about what had occurred.

**ANSWER**:     Northwestern admits that a University faculty member first notified the University's Director of Sexual Harassment Prevention Joan Slavin of Plaintiff's allegations about Ludlow's conduct on February 13, 2012 and that Ms. Slavin immediately began an investigation on behalf of the University of the particular allegations that Plaintiff brought to the University's attention ("the University's Investigation"), during which Ms. Slavin (a) directed Ludlow to have no further contact by any means with Plaintiff and informed Plaintiff of this directive; (b) reviewed documents and other information; (c) interviewed Plaintiff, Ludlow, and several other witnesses; and (d) summarized the information reviewed and her findings and recommendations in a 21-page memorandum to the Dean of the Weinberg College of Arts & Sciences dated April 10, 2012.

8

28.     On or about February 13, 2012, Plaintiff was hospitalized after attempting to commit suicide as a result of the stress and trauma of the events with Ludlow.  She was diagnosed with Post Traumatic Stress Disorder (PTSD), which requires ongoing psychiatric care.  She was released from the hospital on or about February 16, 2012.

**ANSWER**:     Northwestern admits that Plaintiff was hospitalized on February 13, 2012 but

lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph

28.

29.     On or about April 11, 2012, Ms. Slavin, the Director of Sexual Harassment Prevention emailed Plaintiff regarding the findings of the investigation.  Based on the totality of the evidence, Ms. Slavin concluded that Ludlow engaged in unwelcome and inappropriate sexual advances toward Plaintiff on the evening of February 10-11, 2012.  In particular, Ms. Slavin found that Ludlow initiated kissing, French kissing, rubbing Plaintiff's back, and sleeping with his arms on and around Plaintiff on the night of February 10-11, 2012.  She also found that "you [Ms. Ha] were incapacitated due to heavy consumption of alcohol purchased for you by Respondent [Ludlow], and were therefore unable to offer meaningful consent to this physical touching that night".  I also find that Respondent told you he thought you were attractive, discussed his desire to have a romantic and sexual relationship with you, and shared other personal information of a sexual nature, all of which was unwelcome to you."

**ANSWER**:     Northwestern admits that the allegations in Paragraph 29 repeat some of the

information set forth in the April 11, 2012 e-mail referenced in Paragraph 29.  Northwestern denies

that the allegations that Plaintiff brought to the University's attention during the University's

Investigation included all of the allegations now set forth in this Complaint and denies that the

allegations of Paragraph 29 comprise all of Ms. Slavin's findings or reasoning, which are detailed

in Ms. Slavin's April 10, 2012 memorandum to the Dean of the University's Weinberg College of

Arts & Sciences and summarized in an April 11, 2012 e-mail from Ms. Slavin to Plaintiff.

30.     However, Ms. Slavin, for some reason, did not find that Ludlow touched Plaintiff's breasts and buttocks.

**ANSWER**:     Northwestern admits that the University's Investigation did not find that

Ludlow touched Plaintiff's breasts and buttocks because the information revealed during the

University's Investigation did not support a finding that this had occurred. Northwestern denies

any remaining allegations of Paragraph 30.

31.     Ms. Slavin said that she made the Weinberg Dean's Office aware of her findings, and would work with that office on implementing needed corrective and remedial actions. However, she told Plaintiff that Defendant Northwestern would not share details of disciplinary and corrective actions taken against Ludlow because of its confidential personnel nature.

**ANSWER**:     Northwestern admits that Ms. Slavin included the information set forth in

Paragraph 31 in her April 11, 2012 e-mail to Plaintiff but denies that the allegations of Paragraph

31 are a complete statement of the contents of Ms. Slavin's April 11, 2012 e-mail to Plaintiff.

Northwestern denies any remaining allegations in Paragraph 31.

32.     In or around April 2012, Plaintiff retained attorneys to represent her with the matters related to Ludlow's sexual assault on her. Plaintiff was referred to her attorneys by one of Defendant Northwestern's employees who had been working with her regarding Plaintiff's sexual harassment incident.

**ANSWER**:     Northwestern admits that Plaintiff has been represented by multiple

attorneys but lacks knowledge or information sufficient to admit or deny the remaining allegations

of Paragraph 32.

33.     After the investigation was concluded, Plaintiff found out that Ludlow was still on campus and was informed by a faculty member that Ludlow's name was on the syllabus of the courses for next quarter.

**ANSWER**:     Northwestern admits that Ludlow is employed by the University but lacks

knowledge or information sufficient to admit or deny the allegations of Paragraph 33.

34.     When the next quarter started, Plaintiff kept running into Ludlow in hallways and outside of the campus buildings. After knowing that Ludlow was not removed from the campus, Plaintiff felt extremely unsafe and experienced panic attacks, difficulty breathing, and nausea. Her attacks were so severe that Plaintiff could not even leave her house. Plaintiff reported the attacks she experienced to faculty members at numerous times.

1194997.4

**ANSWER**:    Northwestern lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 34.

35.    In one instance, Plaintiff encountered Ludlow on the way to a discussion section
meeting of a political science course in the beginning of the quarter.  After running into Ludlow the
first time, Plaintiff missed three discussion meetings for that course to avoid the possibility of
running into Ludlow again.  Her anxiety became severe when the teaching assistant of the course
warned Plaintiff that she needed documentation to have her absences excused.  Plaintiff either had
to be forced to reveal the sexual assault she experienced or had to have unexcused absences for the
course which would negatively impact her academic record.

**ANSWER**:    Northwestern denies that it required Plaintiff to choose between revealing

the circumstances that led to her allegations against Ludlow and having unexcused absences for

any of her courses.  Northwestern lacks knowledge or information sufficient to admit or deny the

remaining allegations of Paragraph 35.

36.    After these encounters with Ludlow, Plaintiff, through her attorney at that time,
inquired as to whether Ludlow would be removed from the campus based on the findings of the
investigation.  The attorney also asked Northwestern to provide Plaintiff all the information
possible so that she could at least engage in safety planning and determine the best way to fulfill
her academic requirements.

**ANSWER**:    Northwestern admits that it received a letter from an attorney representing

Plaintiff after the conclusion of the University's Investigation, in which Plaintiff's attorney

inquired about the subjects referenced in the allegations of Paragraph 36.  Northwestern denies any

remaining allegations in Paragraph 36.

37.    Defendant Northwestern, through its counsel, confirmed that Ludlow had not been
removed from the campus and reiterated that it would not disclose the details of any disciplinary
actions taken against Ludlow.

**ANSWER**:    Northwestern denies that it did not disclose any of the details of any

disciplinary actions taken against Ludlow and incorporates by reference its Answer to Paragraph

45.  Northwestern admits that it imposed the following disciplinary sanctions and corrective action

1194997.4

short of removal from campus: (a) precluding him from receiving a raise for the 2012-2013

academic year; (b) rescinding his appointment to an endowed professor position (*i.e.*, the John

Evans Professor of Philosophy); (c) strongly advising him to avoid one-on-one social contact with

any undergraduates; (d) prohibiting him from engaging or attempting to engage in a dating,

romantic, or sexual relationship with any Northwestern student in the future; (e) prohibiting him

from providing alcohol to underage students; (f) requiring him to complete a multi-session,

individualized sensitivity/harassment-prevention training program with an outside consultant; (g)

directing him not to have any contact, whether in person or by any other means, with Plaintiff,

including but not limited to personal contact or contact by phone, email, text, Facebook or social

media, as well as making electronic outreaches to or statements about Plaintiff through blogs,

Second Life, or other social media, "tagging" Plaintiff in comments or through online message

boards or other internet sites; (h) directing him that University policy prohibits retaliation of any

sort against Plaintiff or any witness who participated in the University's Investigation and that any

retaliatory conduct would subject him to additional sanctions; and (i) officially warning him that

any similar behavior in the future or failure to comply with the specified disciplinary sanctions or

other corrective actions would subject him to further sanctions, up to and including separation from

the faculty. Northwestern denies any remaining allegations of Paragraph 37.

38.     On or about April 24, 2012, Plaintiff, through her counsels, sent out a demand letter
to Ludlow setting forth his legal liabilities and requesting Ludlow pay Plaintiff's damages caused
by his sexual assault. On or about May 4, 2012, Ludlow, through his attorney, denied the
allegation of sexual assault, and accused Plaintiff of making false statements about Ludlow.
Ludlow threatened to sue Plaintiff for defamation per se and "ordered" plaintiff immediately cease
and desist from making any further "false" statements about Ludlow.

**ANSWER**:     Northwestern denies that either of the letters referenced in Paragraph 38 used

the term "sexual assault." Northwestern admits that, in a letter dated April 24, 2012, Plaintiff's

1194997.4

attorneys sent a letter to Ludlow that identified potential civil legal claims against him and invited

Ludlow to engage in pre-litigation settlement discussions if he was interested in avoiding litigation.

Northwestern also admits that, in a response letter dated May 4, 2012, Ludlow's attorney denied

the allegations set forth in the April 24, 2012 letter from Plaintiff's attorneys, alleged that

Plaintiff's accusations regarding Ludlow were false and defamatory, and ordered that Plaintiff

immediately cease and desist from making any further false statements about Ludlow.

Northwestern denies any remaining allegations in Paragraph 38.

39.     Plaintiff reported this incident to Ms. Slavin because in the email she sent to
Plaintiff in April 11, 2012, she had advised Ludlow "to avoid any behavior whatsoever that could
be construed as retaliation against Plaintiff, now or in the future, for bringing the complaint," and
Plaintiff believed that the threat of lawsuit was retaliatory and was being used to silence her from
raising her legitimate concerns regarding Ludlow.

**ANSWER**:     Northwestern admits that the University repeatedly directed Ludlow to

refrain from engaging in any conduct that could be construed as retaliation against Plaintiff and that

Plaintiff raised a question about whether the May 4, 2012 letter sent by Ludlow's attorney could

constitute retaliation, which Ms. Slavin promptly investigated on the University's behalf.

Northwestern lacks knowledge or information sufficient to admit or deny the remaining allegations

of Paragraph 39.

40.     Plaintiff was told that it was not retaliation and Northwestern did not take any action
regarding the threatening letter Ludlow sent to Plaintiff.

**ANSWER**:     Northwestern admits that, after conducting another prompt and thorough

investigation, the University found and informed Plaintiff that the May 4, 2012 letter from

Ludlow's attorney did not violate the University's policy against retaliation because (a) both

attorney letters were legal position letters setting forth possible claims and (b) the May 4, 2012

letter from Ludlow's attorney was written in direct response to the April 24, 2012 letter from

Plaintiff's attorneys, threatening suit.

41.     On or about March 4, 2013, Plaintiff was put on early release because her mother in
California had health problems that needed immediate medical attention.  The health problems
were caused by extreme emotional distress she had experienced due to her daughter's incident with
Ludlow and the subsequent mishandling of the incident by Defendant Northwestern.  Plaintiff's
mother felt helpless and depressed with the situation her daughter was in, and the fact that nothing
was resolved at Northwestern.  Plaintiff continued to see a psychiatrist while staying in California.

**ANSWER**:     Northwestern does not use the term "early release" and therefore lacks

knowledge or information sufficient to admit or deny the allegations in the first sentence of

Paragraph 41.  Northwestern denies that it mishandled Plaintiff's allegations against Ludlow and

incorporates by reference its Answers to Paragraphs 27, 37, and 45.  Northwestern lacks knowledge

or information sufficient to admit or deny the remaining allegations of Paragraph 41.

42.     Even after coming back to school after the leave, Plaintiff could not handle the full-
time course load.

**ANSWER**:     Northwestern lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 42.

43.     During fall quarter of 2012-2013 academic year, Plaintiff applied for a research
fellowship.  The fellowship committee was very impressed with Plaintiff.  However after revealing
her incident with Ludlow and her ongoing battle with anxiety and panic attacks to an employee
working in the President's Office, she was denied of the fellowship without any explanation.  A
tenured professor inquired on Plaintiff's behalf for the reason of the denial, but the inquiry was
ignored.

**ANSWER**:     Northwestern denies that Plaintiff was denied the "Mellon Mays

Undergraduate Fellowship" ("MMUF") without any explanation.  Northwestern admits that, during

the 2012-2013 academic year, Plaintiff applied for a MMUF; that Plaintiff asserted in her

application materials that she had been sexually assaulted by an unnamed member of the University

14

community; that Plaintiff was applauded for her achievements and was selected as a finalist but did

not receive a MMUF; that Plaintiff was selected as an alternate who could receive a MMUF if one

of the recipients did not complete the MMUF; and that Plaintiff was eligible to participate in many

MMUF programs and activities throughout her time at Northwestern and to apply for other

research funding available exclusively to MMUF finalists.  Northwestern lacks knowledge or

information sufficient to admit or deny the remaining allegations of Paragraph 43.

44.     Frustrated by Northwestern's inaction and its refusal to discuss any aspects of disciplinary action against Ludlow, Plaintiff retained different attorneys to represent her in May 2013.

**ANSWER**:     Northwestern admits that Plaintiff has been represented by different

attorneys.  Incorporating its Answers to Paragraphs 27 and 45, Northwestern denies that its

response to Plaintiff's allegations of sexual harassment against Ludlow constituted "inaction" or

that Northwestern refused to discuss any aspects of the disciplinary sanctions and other corrective

action that the University took against Ludlow based upon the findings of the University's

Investigation.  Northwestern lacks knowledge or information sufficient to admit or deny the

remaining allegations of Paragraph 44.

45.     Plaintiff, through her attorneys, again inquired as to the disciplinary and remedial action taken against Ludlow, but Northwestern refused to discuss the matter because it is a "private" matter and insisted that it did "everything" it could do.

**ANSWER**:     Northwestern denies that it refused to discuss the matter with Plaintiff's

attorneys, admitting that the University (a) informed Plaintiff's previous counsel that Ludlow had

been directed not to have any further contact with Plaintiff after the University's Investigation

concluded and (b) informed Plaintiff's current counsel in a letter dated August 15, 2013 of the

numerous other corrective actions that the University took in response to Plaintiff's allegations of

sexual harassment against Ludlow and to address the finding that Ludlow had violated the

University's policy against sexual harassment, including the following:

- On February 13, 2012, Director of Sexual Harassment Prevention Joan Slavin was informed by a faculty member that Plaintiff had complained about Ludlow's conduct and began an investigation immediately.

- Pending the results of the investigation, Ms. Slavin directed Ludlow to have no further contact by any means with Plaintiff and advised Plaintiff of this directive. Ms. Slavin also directed Ludlow to immediately remove any photos or mentions of Plaintiff from his Facebook page, as requested by Plaintiff, and informed Plaintiff that this was in fact done. In addition, Plaintiff was referred to the University's CARE (Center for Awareness, Response & Education) office, which provides support services to students who report allegations of sexual harassment or other sexual misconduct. Plaintiff was supported in a variety of additional ways during this time by administrators in both the Medill School of Journalism, Media, & Integrated Marketing Communications and the Dean of Students Office.

- Between February 13 and March 26, 2013, Ms. Slavin conducted a thorough investigation of the allegations that Plaintiff had brought to the University's attention.

- During the University's Investigation, Ms. Slavin interviewed several witnesses, including Plaintiff and Ludlow. Ms. Slavin also reviewed documentation relating to Plaintiff's allegations.

- On April 11, 2012, as required by Title IX, Ms. Slavin informed both Plaintiff and Ludlow of the outcome of the University's Investigation. Ms. Slavin found that Ludlow had violated the University's Policy on Sexual Harassment. In addition to reporting the outcome, Ms. Slavin explicitly admonished Ludlow not to retaliate against Plaintiff in any way and informed him that the Dean of the Weinberg College of Arts and Sciences would determine appropriate corrective action.

- On May 15, 2012, the Dean of the Weinberg College of Arts and Sciences informed Professor Ludlow in writing of the various corrective actions that she decided to impose upon Ludlow.

- The University paid Plaintiff's out-of-pocket medical bills that were forwarded to the University's Office of Risk Management.

- After the investigation was concluded, the University promptly and thoroughly investigated a retaliation concern raised by Plaintiff and determined that it was not substantiated.

- The University provided Plaintiff with extensive, ongoing support through its Dean of Students Office, including, but not limited to, assisting with obtaining incompletes in classes so that Plaintiff could return to San Francisco early to receive treatment, securing

16

extensions on assignments from professors, coordinating care and managing crises, assisting with late withdrawals from classes, and identifying and referring Plaintiff to recommended medical care providers and services.

- The University provided a retroactive "drop" for Plaintiff in the Spring Quarter 2012, allowing her to drop classes after the add/drop deadline with no financial penalty. The University also processed or offered to process retroactive drops for the Winter and Spring Quarters 2013, again allowing Plaintiff to drop classes after the add/drop deadline with no financial penalty.

- The assistance of the University's Counseling and Psychological Services office was made available to Plaintiff.

- The University facilitated Plaintiff's withdrawal from study abroad for this Fall 2013.

Northwestern denies any remaining allegations in Paragraph 45.


46.     Plaintiff had initially required psychological care after being sexually assaulted by Ludlow. Her medical condition became more severe after encountering Ludlow on campus. Because of Defendant Northwestern's failure to take preventative and remedial measures after the assault, Plaintiff's condition continued to worsen. She needs psychiatric care and prescription medication to control her severe PTSD, and still must face daily the possibility that Ludlow may be near her at any moment.

        **ANSWER**:     Northwestern denies that it failed to take preventative and remedial measures

in response to Plaintiff's allegations of sexual harassment against Ludlow and admits that it

imposed the disciplinary sanctions and corrective actions outlined in the University's Answers to

Paragraphs 37 and 45. Northwestern lacks knowledge or information sufficient to admit or deny

the remaining allegations of Paragraph 46.


47.     Plaintiff's medical conditions were/are so severe and pervasive that they interfere with her ability to be successful academically. She had to withdraw from most of classes she had enrolled and even had to cancel a study abroad program she intended to participate in due to the need of continued psychiatric support.

        **ANSWER**:     Northwestern admits that Plaintiff withdrew from some classes in which she

had enrolled and decided not to participate in a study abroad program and that the University

supported Plaintiff in connection with these matters as outlined in the University's Answer to

Paragraph 45. Northwestern denies any remaining allegations in Paragraph 47.


48.     When Plaintiff dropped out of the study abroad program, she was informed by
Defendant Northwestern that she did not need to pay any money for the study abroad program.
However, contrary to Defendant's assurance, the company in charge of study abroad program sent
Plaintiff an invoice and continues to attempt to collect on it to this date.

**ANSWER**:     Northwestern denies the allegations in the first sentence of Paragraph 48 and

denies that it assured her that she "did not need to pay any money for the study abroad program."

Northwestern admits that Plaintiff decided not to participate in a study abroad program for which

she had paid a non-refundable $300 "Participation Confirmation" fee charged by a third-party

organization and that Plaintiff was given the option of applying the $300 "Participation

Confirmation" payment toward another study abroad program in accordance with the third-party

organization's "Withdrawal or Deferral Refund Policy" that was available on the organization's

web site. Northwestern lacks knowledge or information sufficient to admit or deny the remaining

allegations of Paragraph 48.


49.     On or about April 24, 2012, Plaintiff registered for a disability service so that she
does not need to explain her absences from classes.

**ANSWER**:     Northwestern admits that Plaintiff completed an Office of Services for

Students with Disabilities "Student Intake Form" in April of 2012 and requested that she not be

required to explain the details of her situation to any teaching staff if she is late for class or misses

class. Northwestern lacks knowledge or information sufficient to admit or deny any remaining

allegations of Paragraph 49.

1194997.4

50.     In or around September 2013, Defendant Northwestern's advocacy center for sexual assault victims, the Center for Awareness, Response, and Education ("CARE") decided to stop working with Plaintiff, quoting "conflicts of interest." This happened shortly after Plaintiff, through attorneys, contacted Northwestern's General Counsels and demanded Defendant take action to remedy damages suffered by Plaintiff from Defendant's violation of Title IX.

**ANSWER**:     Northwestern admits that CARE serves Northwestern students who have experienced sexual assault or other types of sexual violence, as well as students who allege or believe that they have experienced such conduct; that a CARE representative informed Plaintiff in September of 2013 that there was a conflict of interest in their continuing to work together and provided Plaintiff with a list of other available advocacy and counseling services, including one counseling service that Plaintiff was already utilizing; and that Plaintiff then informed CARE that she wished to terminate her relationship with CARE in an e-mail dated February 23, 2014. Northwestern denies the remaining allegations of Paragraph 50.

51.     After filing the lawsuit against Defendant Northwestern on February 10, 2014, Plaintiff experienced inconvenience and difficulties at the hands of Defendant. For example, on or about March 3, 2014, less than a month after Plaintiff filed the lawsuit, Plaintiff found out that she was not automatically registered for a class, despite the fact that every journalism student was supposed to be registered automatically. Due to this, Plaintiff almost missed out taking on the class. The issue was resolved only after Plaintiff angrily complained to an administration.

**ANSWER**:     Northwestern admits that it confirmed Plaintiff's registration for the class referenced in Paragraph 51 on March 4, 2014 and that Plaintiff responded by stating, "This sounds tremendous. Thank you so much." Northwestern denies the remaining allegations of Paragraph 51.

## COUNT I: Violation of Title IX of the Education Amendments Act of 1972

52.     Paragraphs 1 through 51 are hereby restated and realleged as if fully set forth in Count I.

1194997.4

**ANSWER**:     Northwestern incorporates its Answers to Paragraphs 1 through 51 as if fully set forth herein.

53.     Defendant Northwestern University receives federal financial assistance for its education program.  Therefore, Northwestern is subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681 (a), *et seq*.

**ANSWER**:     Northwestern admits the allegations of Paragraph 53.

54.     Defendant owes a duty to Plaintiff to provide and ensure an educational environment free of sex discrimination and sexual harassment, and to enforce the regulations, rules, and laws necessary to protect Plaintiff from acts of sex discrimination and sexual harassment.

**ANSWER**:     Northwestern admits that it is subject to Title IX; that sexual harassment is a

form of sex discrimination prohibited by Title IX; that Title IX prohibits discrimination on the

basis of sex in any education program or activity receiving federal financial assistance; that Title IX

imposes a number of requirements including that institutions identify a Title IX coordinator,

investigate alleged violations of Title IX, and take remedial action necessary to eliminate existing

discrimination on the basis of sex or to eliminate the effects of past discrimination on the basis of

sex; that it has complied with Title IX in relation to Plaintiff's allegations in this lawsuit; and that it

is committed to complying with Title IX in all respects.  Northwestern denies any remaining

allegations of Paragraph 54.

55.     Ludlow, an employee of Defendant, willfully subjected Plaintiff to unwanted and unwelcomed sexual advances, intimidation, statements, and other conduct that was of a sexual nature.  Plaintiff was subjected to this treatment because of her sex.

**ANSWER**:     Northwestern admits that Ludlow is employed by the University and that the

University's Investigation found that Ludlow engaged in unwelcome and inappropriate sexual

advances toward Plaintiff by making unwelcome comments and by initiating rubbing her back and

kissing her.  Northwestern lacks knowledge or information sufficient to admit or deny Ludlow's

state of mind and lacks knowledge or information sufficient to admit or deny the remaining

allegations of Paragraph 55.

56.     Defendant's own investigation yielded a finding that Ludlow's conduct toward
Plaintiff violated Defendant's Policy on Sexual Harassment.

**ANSWER**:     Northwestern admits that the allegations that Plaintiff brought to the

University's attention during the University's Investigation resulted in a finding that Ludlow had

violated the University's policy against sexual harassment but denies that those allegations

included all of the allegations now set forth in this Complaint.  Northwestern denies any remaining

allegations in Paragraph 56.

57.     Defendant knew that Plaintiff's PTSD became more severe after Plaintiff continued
to encounter Ludlow on campus, and that the possibility of such continued encounters in the future
put Plaintiff under severe distress, anxiety, and panic attack.

**ANSWER**:     Northwestern denies the allegations of Paragraph 57.

58.     Ludlow's assault on Plaintiff, Ludlow's presence on campus, her encounter with
him after the assault, and the accompanying risk that she would encounter Ludlow in the future
created a hostile environment that effectively deprived her of the educational opportunities and
benefits provided by the school.

**ANSWER**:     Northwestern denies the allegations of Paragraph 58.

59.     Despite Plaintiff's repeated requests to discuss remedial actions against Ludlow so
that she could conduct herself safely while on campus and so that she could finish her education
without any disruption, Defendant refused to discuss the matter with Plaintiff and just parroted
back that it 'did comply with the requirements of Title IX'.

**ANSWER**:     Northwestern denies the allegations of Paragraph 59 and incorporates by

reference its Answers to Paragraphs 27, 37, and 45 herein.

60.     While Plaintiff continuously suffered from anxiety and distress due to Ludlow's
presence on campus, which compromised her education at Defendant Northwestern, Defendant did
not take any meaningful action to remedy the situation.

1194997.4

**ANSWER**:     Northwestern denies the allegations of Paragraph 60 and admits that it

implemented the disciplinary sanctions and other corrective actions described in the University's

Answers to Paragraphs 27, 37, and 45.


61.     In the original Complaint filed by Plaintiff, it was alleged that:  "Upon information
and belief, at one point, a committee was established to determine what action should be taken
against Ludlow for his sexual assault against Plaintiff.  The committee determined that Ludlow
should be terminated.  Defendant Northwestern ignored its own committee's decision and
recommendation and continues to employ Ludlow as a professor."

**ANSWER**:     Northwestern admits that paragraph 59 of the original Complaint included

the above-referenced allegations and denies any remaining allegations in Paragraph 61.


62.     After the original Complaint was filed, Defendant Northwestern sent a
correspondence to Plaintiff's counsel on February 13, 2014. That correspondence claimed that the
committee referred to in the foregoing paragraph did not issue a written decision in which it
recommended that Ludlow's employment be terminated. Attached to Defendant's February 13
correspondence was a document that was purported to be a copy of the July 10, 2012 "Report of
the Committee on Cause" regarding the proposed sanction of Professor Peter Ludlow.

**ANSWER**:     Northwestern admits that, on February 13, 2014, Northwestern's counsel

sent a letter to Plaintiff's counsel informing him that there was no factual basis for the allegations

in paragraph 59 of the original Complaint; that Northwestern provided Plaintiff's counsel a copy of

the July 10, 2012 "Report of the Committee on Cause" (the "Report") regarding the sanctions and

corrective actions that the University imposed against Ludlow; and that the Report establishes that

the Committee on Cause did not recommend that Ludlow's employment be terminated. A copy of

the Report is attached hereto as Exhibit A.[1] Northwestern denies any remaining allegations in

Paragraph 62.


63.     The Committee on Cause had apparently been convened to review the Dean's
actions with respect to Ludlow because Ludlow had appealed it, and because he was of the position

---

[1] The names of the individual members of the Committee on Cause have been redacted from Exhibit A.

that even the insignificant degree of corrective action Dean Sarah Mangelsdorf had taken in response to Ms. Slavin's findings- was unjustified.

**ANSWER**: Northwestern denies that the multiple disciplinary sanctions and other corrective actions that Dean Mangelsdorf imposed as a result of the University's finding that Ludlow had violated the University's policy against sexual harassment were "insignificant" and incorporates by reference its Answers to Paragraphs 37 and 45. Northwestern lacks knowledge or information sufficient to admit or deny the allegations regarding the reasons for Ludlow's decision to appeal but admits that the Committee on Cause was convened because Ludlow appealed some of the disciplinary sanctions and other corrective actions that Dean Mangelsdorf imposed against him and admits that the Committee on Cause's July 10, 2012 report includes the following statements: "It was the Committee's understanding that we are to review and either approve, or disapprove of the sanctions. It was also explained in a meeting with [the] administration that the committee could suggest additional sanctions . . . . Based on the evidence presented to us, we find probable cause for the actions taken by Dean Mangelsdorf in her May 15 letter and support her decisions including her decision to remove the special honor of an endowed chair . . . . This report was approved by the six members of the Committee on Cause who investigated this matter." *See* Exhibit A. Northwestern denies any remaining allegations in Paragraph 63.

64. Upon information and belief, the Committee on Cause, and/or its individual members, had questioned why Ludlow had not been terminated, and that the Committee and/or its individual members were of the position that termination of Ludlow was warranted and appropriate.

**ANSWER**: Northwestern denies that the Committee on Cause and/or its individual members voted or decided that termination of Ludlow was warranted and appropriate and incorporates by reference its Answer to Paragraph 63. Northwestern lacks knowledge or

information sufficient to admit or deny any allegations regarding the mental state of the members

of the Committee on Cause and denies any remaining allegations in Paragraph 64.

65. Defendant failed to take sufficient and meaningful corrective and remedial action, and actively took retaliatory action against Plaintiff, and as a result of Defendant's deliberate indifference, Plaintiff has been and continues to be subjected to an intimidating, hostile, offensive, and intolerable educational environment.

**ANSWER**: Defendant denies the allegations of Paragraph 65 and admits that it

implemented the disciplinary sanctions and other corrective actions described in the University's

Answers to Paragraphs 37 and 45.

66. By the actions described above, Defendant Northwestern University retaliated and further discriminated against Plaintiff after she brought sexual harassment complaint against Ludlow, and repeatedly requested Defendant to take meaningful corrective and remedial action.

**ANSWER**: Northwestern denies the allegations of Paragraph 66.

67. By the actions described above, Defendant Northwestern University acted to deprive Plaintiff of her rights to be free from discrimination in education on the basis of her sex as provided by Title IX.

**ANSWER**: Northwestern denies the allegations of Paragraph 67.

68. Plaintiff has suffered and will continue to suffer humiliation, mental and emotional anguish, anxiety, and distress as a result of the hostile educational environment created by Defendant and its deliberate indifference.

**ANSWER**: Northwestern denies the allegations of Paragraph 68.

## AFFIRMATIVE DEFENSES

1. Northwestern is not subject to liability under Title IX because it has an effective

policy for reporting and redressing sexual harassment and other types of sex discrimination,

pursuant to which the University conducted a prompt and thorough investigation of Plaintiff's

allegations and implemented appropriate disciplinary sanctions and other corrective actions to

address Ludlow's violation of the University's policy against sexual harassment and to remediate the effects of that conduct on Plaintiff.

2.        Plaintiff's claim in Count I is barred, in whole or in part, by the applicable statute of limitations.

3.        Plaintiff has failed to mitigate her damages, if any.


WHEREFORE, Defendant Northwestern University denies that Plaintiff Yoona Ha is entitled to judgment against it in any amount or to any legal or equitable relief or remedy whatsoever, and asks that Plaintiff's Complaint be dismissed.

Respectfully submitted,


_____ s/Scott L. Warner_____
An Attorney for Defendant
NORTHWESTERN UNIVERSITY

Ellen M. Babbitt
Scott L. Warner (No. 06231380)
Ellen F. Wetmore
Franczek Radelet P.C.
300 South Wacker Drive, Suite 3400
Chicago, Illinois 60606
(312) 986-0300

25

## CERTIFICATE OF SERVICE

I hereby certify that, on June 19, 2014, I electronically filed the foregoing ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system to the following:

> Kevin F. O'Connor
> O'Connor | O'Connor
> 1920 S. Highland Ave. Ste 203
> Lombard, IL 60148
> kevin@oconnor-oconnor.com

> s/Ellen F. Wetmore - #6304273
> efw@franczek.com
>
> FRANCZEK RADELET P.C.
> 300 South Wacker Drive
> Suite 3400
> Chicago, IL 60606
> 312.986.0300

1194997.4