# EXHIBIT A

# FranczekRadelet
ATTORNEYS & COUNSELORS



300 SOUTH WACKER DRIVE, SUITE 3400 | CHICAGO, IL 60606
T: 312.986.0300 | F: 312.986.9192 | WWW.FRANCZEK.COM

SCOTT L. WARNER
312.786.6523
slw@franczek.com

February 13, 2014

**VIA FACSIMILE AND U.S. MAIL**

Kevin F. O'Connor
O'Connor | O'Connor, P.C.
1920 S. Highland Ave. Ste 203
Lombard, IL 60148
Fax. 630-658-0336

    Re:   **Yoona Ha v. Northwestern University, Case No. 14cv00895**

Dear Mr. O'Connor:

    Our firm has been retained to represent Northwestern University in the above-referenced lawsuit. I am enclosing a copy of the July 10, 2012 "Report of the Committee on Cause" regarding the proposed sanction of Professor Peter Ludlow (with the names of the members of the Committee on Cause redacted). Among other things, the enclosed report makes it clear that the Committee on Cause never recommended that Professor Ludlow be dismissed or that his employment be terminated. Rather, the enclosed report makes plain that, although the Committee on Cause could have suggested additional sanctions, it supported the sanctions imposed by Dean Sarah Mangelsdorf, some of which are described in the report.

    In light of the information in the enclosed report, there is no factual basis for the allegations in paragraph 59 of Ms. Ha's Complaint. The enclosed report makes clear that the Committee on Cause most certainly did not determine that Professor Ludlow should be terminated. As a result, it is patently false to assert that the University "ignored" the Committee on Cause's decision and/or recommendation. Similarly, there is no basis for any similar statements that you have made to the media, such as the following statement that appears in today's *Daily Northwestern* article: "We know of [the Committee on Cause's] existence and its decision through sources from inside NU." This statement suggests that the Committee on Cause decided or recommended that Professor Ludlow be terminated, which is simply not the case. Again, there is no support for any assertion or suggestion either (a) that Committee on Cause recommended that Ludlow be terminated or (b) that the University failed to act on any such recommendation. To be clear, the University implemented the sanctions that Dean Mangelsdorf did impose.

    In light of the foregoing, the University is giving you until February 20 to amend Ms. Ha's Complaint to remove any allegations in paragraph 59 and any other allegations that are

**FRANCZEK RADELET**
ATTORNEYS & COUNSELORS

Mr. O'Connor
February 13, 2014
Page 2

unwarranted in light of the contents of the enclosed report. In addition, the University insists that you immediately correct any statements you have made to any newspapers or other media outlets stating or suggesting either that the Committee on Cause recommended or decided that Professor Ludlow be terminated or that the University ignored that recommendation or decision.

In addition, we have been authorized to accept service of the Complaint in this action, so you may serve the Complaint by faxing or e-mailing me a copy of the summons and Complaint.

Sincerely,

Scott L. Warner

Enclosure

# Report of the Committee on Cause

## Proposed Sanction of Professor Peter Ludlow

### July 10, 2012

The Committee on Cause has reviewed documents pertaining to a proposed sanction of Professor Peter Ludlow made because of behavior toward a female undergraduate student. The specific documents we reviewed were:

1. an April 10, 2012 memorandum from Joan Slavin to Dean Sarah Mangelsdorf
2. two letters, dated May 15 2012 and May 29 2012, from Dean Mangelsdorf to Professor Ludlow
3. a letter dated April 20, 2012 from Kristin Case, who apparently is Ludlow's attorney, to Stephanie Graham
4. an email from Ludlow to Dean Mangelsdorf dated May 22, 2012.

It was the Committee's understanding that we are to review and either approve, or disapprove of the sanctions. It was also explained in a meeting with administration that the committee could suggest additional sanctions.

In her letter of May 15, Dean Mangelsdorf imposes a number of sanctions on Ludlow, including the rescission of Ludlow's endowed chair in moral philosophy, a special honor given at the Dean's discretion to award significant scholarly and collegial excellence. In his May 22 e-mail, we read that Ludlow accepts most of the sanctions and acknowledges his behavior but asks that the university stay its rescission of his chair and wishes his sanctions to remain confidential. As a result of this appeal, the matter came before the Committee on Cause.

Based on the evidence presented to us, we find probable cause for the actions taken by Dean Mangelsdorf in her May 15 letter and support her decisions including her decision to remove the special honor of an endowed chair.

*Discussion*

Peter Ludlow is the John Evans Professor of Moral and Intellectual Philosophy in the Weinberg College of Arts and Sciences. Yoona Ha is a freshman who, at the time of the meeting, was 19 years old. Ha took a course from Ludlow in the fall quarter of 2011 and continued to meet with him in the winter quarter in conjunction with another class and an ongoing project involving an online community/game called "Second Life." (Ludlow has written a book about "Second Life" and the subject of the course and the subsequent interview was on the philosophy of cyberspace including the use of avatars for personal interaction.) Although Ludlow had no specific evaluative authority over Ha in the winter quarter of 2012, it seems reasonable to infer that they had an ongoing student-professor relationship. In was in this context that Ha invited him to an art event based on the subject of the class he taught and about which she had interviewed him.

On February 10 2012, Ludlow offered a ride to the event to Ha. Ha was invited to dinner by Ludlow prior to the art event, and then spent an evening and the subsequent night together. Based on mutually agreed upon descriptions, during the course of that evening they had dinner, Ludlow bought Ha at least one drink, (apparently in violation here of state alcohol laws), they visited several bars, clubs and galleries, and afterward, they spent the night together on Ludlow's bed. Apart from this broad description, many specific details about the evening---who had how much to drink, how that drinking affected cognition, and whether there was touching and kissing, and under what consensual agreements, etc., are in dispute. After this evening, Ha contacted several other faculty, and finally the student counseling services, describing her attempt at suicide and her despair.

While Ludlow apparently had no specific evaluative authority over Ha in February 2012, the ostensible motive for their being together during the evening was academic. Ha had taken Ludlow's course on the Philosophy of Cyberspace and she invited Ludlow to accompany her to a show pertaining to Second Life. They had been having ongoing discussions about projects on which Ha was working.

The Dean's May 15 letter to Professor Ludlow cites violation of the University's sexual harassment policy as the grounds for sanctions. Apart from whether there was sexual harassment as defined by administrative and legal authorities, Ludlow's *acknowledged* behavior strikes us as highly inappropriate, deeply unprofessional, and embarrassing to the University and to his colleagues. It had significant and critical impact on the student in question. We believe that rescission of the chair is a reasonable sanction.

This report was approved by the six members of the Committee on Cause who investigated this matter: